**John A. PULICE, Petitioner,**

v.

**STATE ETHICS COMMISSION,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1997.
Decided June 3, 1998.

Evan E. Adair, Erie, for petitioner.

Curtis J. Rogers, Harrisburg, for respondent.

Before KELLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

FLAHERTY, Judge.

The Petitioner, John A. Pulice (Public Official) petitions for review of the order of the State Ethics Commission (Commission), dated March 7, 1997. Public Official is the President of the Millcreek Township School

District (District) Board of Directors (Board). After an investigation, the Commission made findings of fact and concluded that Public Official violated Section 3(a) of the State Ethics Act (the Act) by engaging in conduct that constituted a Conflict of Interest.[1]

The two official actions cited by the Commission as violations were 1) Public Official's participation in Personnel Committee meetings in February of 1995, to create a new position of Assistant Principal/Athletic Director and 2) in April of 1995, participating in the official Board action of voting on the appointment of his son-in-law (son-in-law) for the newly created administrative position at a salary higher than son-in-law was making as Teacher/Athletic Director/Summer School Director.

The Commission concluded that Public Official violated the Act with each participation,[2] but issued no sanctions.[3] We reverse.

## I. Burden of Proof/Standard of Review

The Administrative Agency Law sets forth that appellate review of an adjudication of the Commission is limited to determining whether constitutional rights have been violated, necessary factual findings are supported by substantial evidence or an error of law has been committed.[4] *Phillips v. State Ethics Commission,* 79 Pa.Cmwlth. 491, 470 A.2d 659 (1984). Substantial evidence is such evidence that a reasonable person would consider adequate to support the finding. *Yocabet v. State Ethics Commission,* 109 Pa. Cmwlth. 432, 531 A.2d 536, 537 (1987).

The Ethics Act applies a different standard, however, to the burden of proof it requires the Commission to meet in order to find a violation. The Commission is responsible for the entire investigative, prosecutorial and judicial functions. The standard for the Commission's final decision (adjudication) is governed by Section 8(g) of the Act, 65 P.S. § 408(g), which establishes that at least four members of the Commission, "must find a violation by clear and convincing proof" regardless of whether a civil or criminal penalty, or both, is imposed.[5] This "clear and convincing proof" standard is different from, but does not conflict with, the "substantial evidence" standard for appellate review set

1. Act of October 4, 1978, P.L. 883, No. 170, *as amended,* 65 P.S. §§ 401–413, relating to Conflicts of Interest of Public Officials and Employees is otherwise commonly referred to (but not officially titled) as the "State Ethics Act." Section 3(a) of the Act, 65 P.S. § 403(a) is the subject of the violation:

   "No public official or public employee shall engage in conduct that constitutes a conflict of interest."

2. Each violation of Section 3(a) is a felony punishable by imprisonment up to five years and a fine up to $10,000 or both. 65 P.S. § 409.

3. Section 9(g) of the Act, 65 P.S. § 409(g), provides that a public official of a political subdivision who acts in good faith reliance on a written, nonconfidential opinion of the solicitor of the political subdivision shall not be subject to the penalties provided for in subsections (a) and (b) (of Section 9 of the Act, 65 P.S. § 409, relating to felony or misdemeanor convictions and fines up to $10,000), nor for the treble damages provided for in (c) (of Section 9 of the Act, 65 P.S. § 409). In this instance, Public Official acted on such advice of the School Solicitor.

   The School Solicitor issued a written opinion, dated April 11, 1995 concluding that the defini-

tion in the Act of "immediate family" member did not include a son-in-law, and that a board member voting on a public employee position for the son-in-law did not constitute a conflict of interest as defined in Section 2 of the Act, 65 P.S. § 402. The Solicitor also considered the question under the Pennsylvania Public School Code, 24 P.S. § 11–1111, regarding employment of relatives of School Directors, concluding that a son-in-law does not fall within that provision. Consequently, Solicitor concluded that the board member would not be prohibited under the school code from voting on a position to be awarded to a son-in-law. Solicitor opined that in this instance, Public Official could vote on the employment of his son-in-law as a public employee of the school district.

4. 2 Pa.C.S. § 704.

5. In addition to the traditional standard of review recited in *Phillips, supra,* the Act at 65 P.S. § 408(g) states in pertinent part:

   "At the conclusion of a hearing concerning an alleged violation and in a timely manner, the commission shall deliberate on the evidence and determine whether there has been a violation of this act. *At least four members of the commission present at a meeting must find a*

forth in the Administrative Agency Law.[6]

During appellate review, the "substantial evidence" test must first be applied to determine whether each of the necessary findings of fact relied upon for the determination of a violation are supported by substantial evidence. *Phillips*. After the facts are found to be supported, this Court must then consider whether all the facts found by the Commission are "clear and convincing proof" that Public Official violated the Act.[7]

This higher standard of clear and convincing proof is an indispensable element of appellate review because the Commission is a Commonwealth agency empowered with imposing severe criminal penalties for a violation of Section 403, which is a felony, such as in the present case. The Commission sits, not only as judge and jury, but as prosecutor, investigator and witness as well. In addition, determinations of the Commission are not reviewed by an intermediate tribunal before being subject to our appellate review. It is, therefore, essential that the adjudications of the Commission that Public Official committed a felony by violating Section 403 be scrutinized on appeal as the legislature mandated.

On appeal from the decision of the Commission, Petitioner has raised several issues,

of which only two need to be addressed, to wit: (1) that the Commission abused its discretion in reaching its conclusions of law that a violation occurred on each of the two counts charged without applying the required, more stringent, "clear and convincing" evidence standard; and (2) that the Commission committed errors of law in reaching the conclusion that Public Official violated the Act by voting on the creation of a new position and voting on the appointment of the son-in-law to the new position on the basis that the Commission misinterpreted the language of the Act and did not consider the applicable decision of the Supreme Court of Pennsylvania.

## II. Creation of a New Position

The Commission maintains that Public Official violated the Conflict of Interest provisions of the Act by participating in discussions and decisions as a member of the Personnel Committee which recommended to the Board the creation of the new administrative position at issue. The findings of the Commission offer no evidence, however, suggesting how the mere creation of a position creates a Conflict of Interest, since it confers neither benefit nor compensation, pecuniary or otherwise, to any individual until the position is filled.[8] The Commis-

---

*violation by clear and convincing proof." [Emphasis added].*

6. 2 Pa.C.S. § 704.

7. While the more stringent standard for the Commission to find a violation of the Act seems to be in conflict with the standard of review recited in the Administrative Agency Law, Section 12 of the Act, 65 P.S. § 412, addresses this conflict specifically by stating: "If the provisions of the act conflict with any other statute, ordinance, regulation or rule, the provisions of this act shall control."

8. Commission's Findings of Fact:
   10. b. Daughter, Paige Pulice-Hanlon, has been employed as a Teacher since August 26, 1985.
   c. Son-in-law, David Hanlon, has been employed in various positions since November 2, 1979, most recently as an Assistant Principal/Athletic Director.
   11. Paige Pulice and David Hanlon were married on November 29, 1991.
   ... 18. Superintendent Robert Agnew had been an advocate of changing the status of Teacher/Athletic Director to Assistant Princi-

pal/Athletic Director, further adding that the community of Millcreek formed an ad hoc committee which recommended the change in status some five years earlier.
   a. Agnew had recommended this change at least five years earlier.
   b. Personnel Director Vincent Savelli supported this change.
   c. The change had been brought up several times over the years and was not acted on for financial reasons.
   19. The reason for recommending the change was that Assistant Principals were responsible for evaluating coaches, further stating that the reason for the recommended change was because of policy problems in evaluating coaches, said determination being made after four coaches were relieved of their duties.
   a. A belief existed that most of the assistant principals had never been involved with coaching and were not providing objective evaluations.
   b. The school administration believed that having the athletic director perform evaluations would result in more objective evaluations.

sion's litany of over fifty findings presents no evidence that the son-in-law would automatically, or otherwise, be appointed to the new position at the time of its creation.

The record is void of any preferential treatment the son-in-law received at any time before formal applications were solicited from the public. The position was properly posted for all residents of the District and others were welcomed to apply, in accordance with school law and policy.

The creation of the new position could have reduced the son-in-law to only being a teacher without retaining the two supplementary positions he was currently holding.[9] The son-in-law, who had over 15 years seniority did not have to be retained for the new job in order to keep his tenured teaching position. In order to even be considered for the new position, however, the son-in-law had to meet the Board approved qualifications that required a Pennsylvania certification as a Secondary Principal with a preference for at least five years certified teaching experience in the state, three years experience as Athletic Director and other qualifications that did not limit potential applicants by geography, district, or school.[10]

Even though the son-in-law was the sole applicant for the new position, he was interviewed by a search committee, interviewed a second time by a new Superintendent and the assistant Superintendent, both of whom recommended him. He was approved unanimously by the Board. The new Superintendent, Dr. Lindquist, testified that he was under no obligation to recommend anyone from the first round of applicants. Most importantly, however, the Commission's own investigative division concluded that Public Official had no involvement in the creation of the new position outside of participating in authorized employment.

■ These facts found by the Commission present strong, uncontradicted evidence that this newly created position was not created specifically to promote or otherwise benefit son-in-law, but was for the benefit of the District. There is no evidence at all from which it can be inferred, rather than speculated, that Public Official "used his authority" for the private pecuniary benefit of son-in-law by voting for the creation of the new position. At the time that Public Official voted on the creation of the new position there were no applicants. Consequently, there is not even substantial evidence, let alone clear and convincing evidence that supports the Commission adjudication that Public Official violated section 3(a) of the Act by, "participating in Personnel Committee actions as to the creation of an Assistant Principal/Athletic Director position ...." The Commission's adjudication is, therefore, an error of law.

### III. Voting on the Appointment of Son-in-Law

The Commission concluded that Public Official "technically violated" section 3(a) of the Act because the vote that he cast as a Board member in favor of appointing an immediate family member, the son-in-law, to a higher-paying position constituted a Conflict of Interest by directly causing pecuniary benefit to his daughter, Paige, as well as to his son-in-law.

#### A. Immediate Family

The Commission charges Public Official with using his public office for the private pecuniary benefit of his daughter, Paige, and son-in-law as members of his immediate family. Petitioner first challenges the Commission's inclusion of son-in-law within the Conflicts of Interest definition in Section 2 of the Act, 65 P.S. § 402. In support of its conclusion that "son-in-law" is included in the definition of "immediate family" member, the Commission reasoned that Public Official is

---

c. The athletic director position was classified as a teacher position and teachers were not permitted to evaluate coaches.

9. The Commission found, at Finding of Fact No. 35(a) that, "By incorporating the duties of Summer School Director and Athletic Director into the Assistant Principal/Athletic Director position,

those two areas were eliminated as supplemental positions."

10. Son-in-law had been certified as a Secondary Principal since 1993. The new position was created in 1995.

"circumventing" the pecuniary benefit prohibition to his daughter by, in effect, channeling funds to her through her husband, the son-in-law.

The Commission is bound, however, by the plain language and legislative intent of the entire statute. "Immediate family" as defined in Section 2 of the Act, 65 P.S. § 402 is not difficult to understand: "A *parent, spouse, child, brother* or *sister*." (Emphasis added.) The definition in the Act for "immediate family" member clearly does not include any in-laws, including a son-in-law, and has no language in it from which "in-law" can be implied. The legislative intent of the statute is clear, as stated in Section 1(a) of the Act, 65 P.S. § 401, that "the General Assembly by this act intends to define as clearly as possible those areas which represent conflict with the public trust."

██ It is, therefore, clear that the legislature has deliberately omitted any "in-law" from the definition of "immediate family" and the Commission cannot enlarge the definition of "immediate family" in the face of the clear legislative intent. The Commission has, therefore, committed an error of law by including son-in-law as an immediate family member in considering whether Public Official's actions constituted a Conflict of Interest by voting on the appointment of son-in-law to the new position as well as his voting on the creation of the new position.

### B. *Joint Bank Account*

Commission reasoned that, even if son-in-law was not an immediate family member, pecuniary benefits to Public Official's daughter, Paige, resulted because of their maintaining a joint bank account into which Paige and son-in-law's paychecks were automatically deposited by payroll deduction and from which joint household, mortgage, car lease, utilities, credit card and other joint expenses were paid. The joint bank account was created prior to the creation of the new position.

The Commission concluded that son-in-law received a prohibited private pecuniary benefit through the salary increase and that Paige received a prohibited private pecuniary benefit when the amount of the salary increase,

not the amount of the entire paycheck, was deposited into the joint bank account and used in part to pay their joint obligations.

For the reasons previously set forth, son-in-law is obviously not within the purview of the Act. Even if son-in-law was an immediate family member, however, and even if son-in-law and Paige received a private pecuniary benefit, the existence of a joint bank account does not implicate Public Official through Paige if the salary increase has a de minimis economic impact or if it affects to the same degree a class consisting of an occupation or other group which includes the son-in-law as a member of Public Official's immediate family or if the salary increase is not personal financial gain other than compensation provided by law.

The Commission finds the violation of the Act by applying only the first sentence of the definition of Conflict of Interest Section 2 of the Act and disregarding, without explanation, the complete second sentence of the definition. The entire definition of "Conflict of Interest" under the Act is set forth under the definitions in Section 2 of the Act, 65 P.S. § 402, and reads:

"Conflict" or "conflict of interest." Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. *"Conflict" or "conflict of interest" does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated. [Emphasis added]*

Further, the context of the meaning of Conflict of Interest cannot exclude the purpose of the Act set forth by the legislature in Section 1 of the Act, 65 P.S. § 401, which states, in pertinent part:

(a) The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office *other than compensation provided by law* is a violation of that trust....Furthermore, it is recognized that clear guidelines are needed in order to guide public officials and employees in their actions. Thus, the General Assembly by this act intends to define as clearly as possible those areas which represent conflict with the public trust. [*Emphasis Added*].

A thorough analysis of whether or not the facts surrounding the Public Official's Board vote on the appointment of his son-in-law amount to a Conflict of Interest requires further examination of several particulars: 1) the determination of "pecuniary benefit," 2) the determination of whether the son-in-law, if a family member, received compensation other than that provided by law, 3) the determination of whether or not the compensation received affected to the same degree a class consisting of an occupation which includes a member of Public Official's immediate family, and 4) the determination of the "economic impact".

### 1. Pecuniary Benefit

Petitioner challenges the Commission's conclusion that his daughter, Paige, received a "private pecuniary benefit" from son-in-law's salary increase when he deposited it in a joint account which had been used for many years before to pay joint expenses.

The significant term, "pecuniary benefit," is not defined in the Act.[11] However, Section 1 of the Act, 65 P.S. § 401 clearly sets forth that a violation is, "any effort to realize personal financial gain through public office *other than compensation provided by law*." Obviously the Act was not intended to be concerned even with immediate family members who receive only compensation provided by law. In addition, the second sentence of the definition of Conflict of Interest expressly *excludes* other situations which are not either pecuniary benefit or *are* compensation provided by law. In addition to compensation otherwise provided by law, there are also two specific situations expressly mentioned in the Conflicts of Interest definition, which are *not* to be held as a conflict under the statute, to wit: 1) any action having a de minimis economic impact or 2) any action which affects to the same degree a class consisting of an occupation which includes a member of the immediate family of the public official.[12]

The case *sub judice* is just such an instance of an action having three exceptions to the pecuniary benefit requirement for a conflict of interest violation: 1) official action which involves only compensation provided by law, 2) an action that affects to the same degree an excluded occupation or class, and 3) de minimis economic impact.

### 2. Compensation Otherwise Provided by Law

Here, the salary which is the indicia of the "pecuniary benefit," is pre-determined by an Act 93 Agreement [13] adopted by the Board in

11. Where terms are not defined in statutes, the Statutory Construction Act of 1972 requires words and phrases to be construed by their common and approved usages. 1 Pa.C.S. § 1903. Black's Law Dictionary defines "pecuniary" as, "Monetary, relating to money; financial; consisting of money or that which can be valued in money." *Black's Law Dictionary* 1131 (West's Centennial 6th Ed.1990).

12. The pertinent part of the second sentence of the definition of Conflict of Interest, as set forth in Section 2 of the Act, 65 P.S. § 402, states:

... 'Conflict' or 'Conflict of Interest' does not include an action having a de minimis economic impact or which affects to the same degree a class ... consisting of an ... occupa-

tion or other group which includes ... a member of his immediate family....

13. Act 93 states that the purpose of the section is to provide a means by which compensation matters affecting school administrators can be resolved through the adoption of a written compensation plan for administrators. Act 93 requires applicable school employers to, *inter alia*, adopt written administrator compensation plans ("Act 93 Agreement"), applying to all eligible school administrators, continuing in effect until a time specified in the plan (at least one school year). The plan must include a program determining administrative salaries, a salary schedule or amount, a listing of fringe benefits, and a statement that school employers and administrators shall continue to be subject to the Public

1993, two years prior to the creation of the position.[14] This compensation to the son-in-law is a classic example of "compensation provided by law," which is intended to be excluded by Section 1 of the Act since the son-in-law's compensation must be determined in accordance with a legislatively mandated employment agreement for all school administrators. The Commission erred when it did not exclude such compensation.

### 3. Compensation that affects to the same degree a class consisting of an occupation

In addition, the compensation to the son-in-law is excluded from being a pecuniary benefit compensation that affects to the same degree a class consisting of an occupation. The amount of the salary increase affected to the same degree every member of the class of school administrators classified as "Assistant Principal/Athletic Director." The increase was not in the form of a bonus or other individual increase. The Commission erred when it included such compensation within the definition of "private pecuniary benefit."

### 4. Economic Impact

Since the statute demands that the "economic impact" on the "occupation of the immediate family member" be determined in order to establish if that "economic impact" is of a "de minimis" nature, and, since, in this instance, the Commission has made such a determination, we must rely upon the findings of the Commission in reviewing whether or not the "economic impact" is of a "de minimis" nature which would exclude the salary increase from being a pecuniary benefit to son-in-law and Paige.

After reviewing the Commission's Findings of Facts, we conclude that the Commission erred by ignoring its own findings of fact in

concluding that there was a violation of the Act. The Commission's Findings Nos. 36, 36a, 36b and 42d-e are substantial evidence of the economic impact on the son-in-law (and thus the daughter):

36. The Change of Status and subsequent hiring of [son-in-law] as Assistant Principal/Athletic Director resulted in a pay increase; an increase in the number of days he was required to work; and additional responsibilities, further stating that *the increase in number of days he was required to work and the additional responsibilities mostly resulted in a decrease in pay for [son-in-law]. Emphasis added.*

36a. As an Assistant Principal, [son-in-law] was required to work an additional twenty-four (24) days each school year, the difference between 186 days worked as a teacher and 210 as an Assistant Principal.

36b. The added responsibilities included that of Director of Summer School and Coordinator of the Academic Sports League.

42d. If [son-in-law] remained a teacher, his salary for 1995/96 would have been $41,161, plus $4,000 for summer school, $2,400 for credits [beyond the Bachelor's degree], and $6,477 for Athletic Director, yielding a total of $54,038.

42e. As Assistant Principal/Athletic Director, [son-in-law] received $2,750 more for 1995/96 than in the position of Teacher/Athletic Director, but [son-in-law] also had to work 210 days rather than 186 days as a teacher (excluding summer school).

In Finding 36, the Commission finds both that the new job resulted in "a pay increase", but "mostly resulted in a decrease in pay." In determining "economic impact," consideration must be given to the fact that even

Employee Anti–Strike Law, the Act of June 30, 1947, P.L. No. 1183, Sections 1 through 4, 43 P.S. §§ 215.1 through 215.4.

14. The Commission found, at Finding of Fact No. 32, that, "The salary for the [newly created] Assistant Principal/Athletic Director position was determined by the administration using the guidelines established in the Millcreek Township

School District Act 93 Administrator Compensation Plan for the 1994–1997 school years, as approved by the Board of Directors on September 24, 1993. (a) The contract established the base salary and number of work days for each administrative position. (b) New administrators could be paid a percentage (80 – 100%) of the base salary set forth in the contract."

though the total annual salary was increased by $1672 ($55.710 in the new position less $54.038 in the former position), the new position required greater qualifications, greater responsibility and more days worked. Although there was an increase in his gross pay, son-in-law was required to work 24 additional days in the new position. The net effect is that his daily salary was actually reduced from $290.53 per day for the 186 day work year to $265.28 per day for the 210 day work year into which he was "promoted," resulting in a net daily reduction of $25.25 per day.

Consequently, the "economic impact", as correctly found by the Commission at Finding 36, "mostly resulted in a decrease in pay for [son-in-law]." There is no explanation by the Commission of how such a decrease in daily pay was determined to be a "pecuniary benefit" without first concluding it had a de minimis economic impact. The Commission instead focused only on the first sentence of the definition of Conflict of Interest because the son-in-law deposited the paycheck in their joint account. The Commission erred in interpreting the law when it ignored the economic impact of Finding 36, i.e., the economic impact of a small salary increase resulting in a per diem decrease in pay considering the increased responsibility and additional workdays, and failed to consider the exclusion contained in the second sentence of the definition of Conflict of Interest – conduct which is excluded from a Conflict of Interest – because it results in a "de minimis economic impact on the public official's immediate family member."

In its reasoning and conclusions of law, the Commission fails to mention, let alone consider, this "de minimis economic impact", as well as a substantial amount of its own findings which are *contrary* to its conclusion (Findings of Fact 36, 36a, 36b, 42d, 42e). Under the ordinary standard of a "substantial evidence" test, these findings contrary to its conclusion would not be weighed against the finding in support of the decision, i.e., the deposit of the increase into the joint bank account and its use to pay the mortgage, utilities and other joint expenses. However, in finding a violation under the more stringent "clear and convincing" threshold required by the Act, the Commission must weigh contrary findings against supportive findings in order to determine if the evidence supporting the violation decision was "clear and convincing." Here, the Commission committed an error of law by concluding that the evidence was clear and convincing that the Act was violated when it obviously never considered the facts that would support any of the exclusions also set forth in the Act.

The Commission may have been overly influenced by its own Investigative Division in an effort to correct the legislature as it agreed with its prosecutorial arm "that a finding of no violation in this case would create a major loophole in the Ethics Law." (SEC Adjudication, pp. A18, 19, Petitioner's Brief.).

## IV. Conclusion

Although there may be numerous cases where public officials seem to commit acts which create the "appearance of impropriety," the Commission is limited to enforcing those violations specifically set forth in the Act. It is not the function of the Investigative Division or the Ethics Commission itself to plug major loopholes in the Ethics Law which gives them power to adjudicate public officials as felons and to imprison and fine them. The Legislature, having greater political wisdom, is presumed to have considered the other instances not in the Act which create an "appearance of impropriety" and have wisely decided to expressly exclude such actions, omit language regarding such actions from the Act and/or to leave the remedy for such actions to the voters at the ballot box.

There is no need, let alone no authority, for either the Commission or the Judicial Branch to exceed the scope of the Act set forth in Section 1:

> The Legislature hereby declares ... that any effort to realize personal financial gain through public office other than compensation provided by law is a violation .... [I]t is recognized that clear guidelines are needed in order to guide public officials and employees in their actions. The General Assembly by this act *intends to define*

*as clear as possible* those areas which represent *conflict* with the public trust.

65 P.S. § 401 (emphasis added).

Because we reverse the Commission on the grounds stated above, we do not need to reach the other issues raised by Petitioner on appeal of whether or not a son-in-law falls within or outside the definition of child; the meaningless effect of the vote on the 8 to 0 outcome; whether the Commission violated its obligations under Section 8 and Section 10.1 of the Act in failing to terminate its inquiry upon finding that complaints filed did not establish reason to believe a violation had occurred, in failing to give notice of such finding, in failing to determine whether the complaints had been frivolously filed, in pursuing an investigation upon an entirely different allegation and in failing to terminate and address the improper investigation.

### ORDER

NOW, June 3, 1998, Order No. 1035 of the State Ethics Commission issued March 7, 1997 at Docket No. 95–076–C2 is reversed.