Edward R. McGUIRE, Petitioner,

v.

STATE ETHICS COMMISSION,
Respondent.

Daniel MARCHITELLO, Petitioner,

v.

STATE ETHICS COMMISSION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 16, 1995.

Decided April 18, 1995.

---

Michael J. Witherel, for petitioners.

Vincent J. Dopko, Chief Counsel, for respondent.

Before PELLEGRINI and NEWMAN, JJ., SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Edward R. McGuire (McGuire) and Daniel Marchitello (Marchitello) have filed consolidated appeals from separate orders of the State Ethics Commission (SEC) determining that they both violated the State Ethics Act (Ethics Act) by accepting excess compensation in their capacities as board members and officers of the North Versailles Township Sanitary Authority (Authority) and ordering them to pay restitution to that Authority.

This appeal arises as a result of two complaints that were received by the Investigative Division of the SEC regarding possible violations of Section 3(a) of the Ethics Act [1] by McGuire and Marchitello. Specifically, the complaints alleged that McGuire and Marchitello had received excess compensation for monthly meeting pay as board members of the Authority. After providing them with notice of the complaints, the SEC conducted an investigation that included reviewing minutes from Authority board meetings as far back as 1963 that discussed monthly meeting payments and salaries for Authority board members and officers.

Upon completion of the investigation, the SEC sent McGuire and Marchitello "Investigative Complaints" finding that the allegations leveled against them were that they violated Section 3(a) of the Ethics Act because they received $100 and $105 respectively per month in meeting pay as board members of the Authority when the North Versailles Township Board of Commissioners (Township Commissioners) had only approved $25 per meeting. Approval by the

---

1. The allegations referred to violations of Section 3 of the Act of October 4, 1978, P.L. 883, 65 P.S. § 403(a), also known as Act 170 of 1978, and violations of Section 3 of the Act of June 26, 1989, P.L. 26, 65 P.S. § 403(a), which reenacted and amended Act 170 of 1978 because some of the activities allegedly occurred prior to the effective date of the 1989 amendments. Act 170 of 1978 provides the following:

> No public official or public employee shall *use his public office* or any confidential information received through his holding public office to obtain financial gain other than compensation provided by law for himself, a member of his immediate family, or a business with which he is associated. (Emphasis added.)

Act 9 of 1989 provides:

> No public official or public employee shall engage in conduct that constitutes a conflict of interest.

A conflict of interest is defined at 65 P.S. § 402 as:

> *Use by a public official or public employee of the authority of his office* or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. "Conflict" or "conflict of interest" does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated. (Emphasis added.)

Under that same section, "de minimis economic impact" is defined as an economic consequence which has an insignificant effect.

Township Commissioners was required because the Authority was a lease-back Authority and the Township was legally responsible for all the debts of the Authority. As such, it was responsible for approving the Authority's budget each year, including the salaries of the Authority's members and officers.

McGuire and Marchitello filed answers to the Complaints denying the allegations and contending under New Matter that:

- the total compensation, including the increased monthly meeting pay of the Authority board members, had been authorized by the Township Commissioners by official action when they approved the annual budgets of the Authority;
- the SEC had not filed complaints against other board members of the Authority even though they had also received compensation in the same manner, thereby constituting selective prosecution against them; and
- their acceptance of increases in monthly meeting pay did not constitute use of public office to receive financial gain under the Ethics Act.

After a hearing, the SEC made factual findings which are not in dispute.

As to the amount of compensation authorized for attendance at monthly meetings, the Township Commissioners in 1963 approved Ordinance # 539 which authorized compensation for members of the Authority at $25 per meeting for a total of 15 meetings a year. During the period in which McGuire and Marchitello were charged, the Township Commissioners did not enact any ordinance increasing monthly meeting compensation. Despite the fact that the Township Commissioners never authorized an increase in monthly meeting pay, in 1978, Authority board members began receiving $100 per month to attend monthly meetings even though they were only authorized to receive $25 per meeting.[2] Because Authority board members were only authorized to receive $25 per meeting, the SEC determined that during McGuire's term in office as secretary from 1988 through 1990,[3] he had received $3,375 in excess compensation for monthly meeting pay.[4] Similarly, during Marchitello's term in office as treasurer from 1988–1993, he had received $7,020 for monthly meeting pay that he was not authorized to receive.[5] The SEC specifically found that neither McGuire nor Marchitello participated in any action to instigate or vote to increase

---

2. Marchitello, however, began receiving $105 to attend monthly meetings. There is no explanation in the record as to why he was paid $5 more than the other board members.

3. The SEC apparently began their calculations of compensation received in 1988 because the Investigative Complaint was filed in 1994 and there was a six-year statute of limitations. *See* 42

Pa.C.S. § 5527 which provides that any civil action or proceeding which is neither subject to another limitation specified in this subchapter or excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.

4. The SEC calculated that amount as follows:

| | | |
|---|---|---|
| Monthly meeting pay authorized to receive for 1988–1990 | $1,025 | ($25/meeting × 15 meetings per year = $375/yr $375 × 3 years = $1,025) |
| Monthly meeting pay actually received for 1988–1990 | $4,500 | ($100/meeting × 15 meetings/year = $1,500 $1,500 × 3 years = $4,500) |
| Total unauthorized compensation received: | $3,375 | |

5. The SEC calculated that amount as follows:

| | | |
|---|---|---|
| Monthly meeting pay authorized to receive for 1988–1993 | $2,250 | ($25/meeting × 15 meetings per year = $375/yr $375 × 6 years = $2,250) |
| Monthly meeting pay actually received for 1988–1993 | $9,270 | ($105/meeting × 15 meetings per year for 1988, 1989, 1990, |

payments, only that they received excess compensation in years 1988–1990 and 1988–1993, respectively, in violation of the Ethics Act.[6]

Regarding McGuire's salary as secretary of the Authority board and Marchitello's salary as treasurer of the Authority board, the SEC found no violation of the Ethics Act. It noted that Authority board members voted to properly approve the secretary and treasurer's salaries, and that the Authority board was authorized to set those standards by Section 7 of the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. § 309(B), permitting Authority board members to set their own salaries.

The SEC then determined that under duly authorized resolutions, McGuire was authorized to receive $275 per month for serving as secretary and Marchitello was entitled to receive $200 per month for serving as treasurer.[7] Based on those figures, the SEC concluded that McGuire had received $2,700 [8] *less* than he had been authorized to receive for serving as secretary and Marchitello had received $4,200 [9] *less* than he was authorized to receive for serving as treasurer.

---

1992 = $1,575 × 4 = $6,300
$105/meeting × 14 meetings
for 1991 = $1,470
$100/meeting × 15 meetings
for 1993 = $1,500
Total: $9,270)

| | | |
|---|---|---|
| Total unauthorized compensation received for 1988–1993 | $7,020 | |

6. Specifically, regarding McGuire, the SEC stated:

> Obviously, McGuire did not intend to violate the Ethics Law. The excess compensation which he received resulted from an erroneous practice which started *before he even came on the Board*. Although intent is not a requisite element for a violation of Section 3(a) of either Act, the violations in this case were clearly unintentional. (Emphasis added.)

Similarly, regarding Marchitello, the SEC stated:

> Obviously, Marchitello did not intend to violate the Ethics Law. Most of the excess compensation which he received resulted from an erroneous practice which started *before he even came on the Board*. Likewise, the excess officer's pay Marchitello received in 1992 appears to have been the result of the mistaken belief that it had been properly authorized. Although intent is not a requisite element for a violation of Section 3(a) of either Act, the violations in this case were clearly unintentional. Marchitello came on the Board in 1980 and the increase to $100 occurred in 1978. (Emphasis added.)

7. The SEC relied on the following minutes of the Authority:

> **03/14/64** Authority voted for secretary to receive $100.00 per month and treasurer to receive $50.00 per month.
> **10/05/65** Authority voted for secretary to receive $100.00 more per month and treasurer to receive $50.00 more per month.
> **01/29/68** Authority voted for secretary to receive $50.00 more per month and treasurer to receive $50.00 more per month.
> **01/15/75** Authority voted for secretary to receive $5 more per month and treasurer to receive $10 more per month.
> **12/01/77** Authority voted for secretary and treasurer to receive $20 more per month.
> **12/15/83** Authority voted for treasurer to receive $20 more per month.

8. The SEC calculated that amount as follows:

| | | |
|---|---|---|
| Secretary's salary authorized for 1988–1993 | $9,900 | ($275/mth × 12 mths = $3,300 $3,300 × 3 years = $9,900) |
| Secretary's salary actually received for 1988–1993 | $7,200 | ($200/mth × 12 mths = $2,400 $2,400 × 3 years = $7,200) |
| Total authorized and not received | $2,700 | |

9. The SEC calculated that amount as follows:

| | | |
|---|---|---|
| Treasurer salary authorized for 1988–1992 | $12,000 | ($200/mth × 12 mths = $2,400 $2,400 × 5 yrs = $12,000) |

Based on those calculations, the SEC offset the difference that was owed to McGuire for his salary against the amount that was overpaid to him for monthly meetings and determined that he had been paid a total of $450 in excess compensation in violation of Section 3(a) of the Ethics Act by using his public office to obtain personal financial gain.[10] As for Marchitello, the SEC offset the difference that was owed to him for his salary against the amount that he was overpaid for monthly meetings and determined that he had been paid a total of $2,580 in excess compensation in violation of Section 3(a) of Ethics Act, also for using his public office to obtain financial gain.[11]

Even though the SEC determined that the officer's monthly meeting pay was issued and accepted based upon a prior practice of the Authority in which McGuire and Marchitello did not participate and there was a lack of intent by them to violate the Ethics Act, it determined that intent was not an element for violation of Section 3(a) of either Act 170 or Act 9 and both McGuire and Marchitello had violated Section 3(a) of the Ethics Act.[12] It then ordered McGuire to pay restitution to the Authority in the amount of $450 and Marchitello to pay $2,580 to the Authority. McGuire and Marchitello filed appeals from those orders which were consolidated and are now before this court.[13]

■ The primary issue that must be decided here is whether McGuire and Marchitello used their public offices to obtain personal financial gain in violation of Section 3(a) of the Ethics Act.[14] McGuire and Mar-

| | | |
|---|---|---|
| Treasurer salary received for 1988–1992 | $7,800 | ($120/mth × 12 mths = $1,440 $1,440 × 4 yrs = $5,750 $170/mth × 12 mths = $2,040 Total: $7,800) |
| Total authorized and not received | $4,200 | |

10. Because the SEC initially determined that McGuire had received $225 of that amount under Act 170, and compensation received under that Act could not be recouped pursuant to this court's holding in *Rebottini v. State Ethics Commission*, 160 Pa.Commonwealth Ct. 157, 634 A.2d 743 (1993), where we determined that the SEC has no statutory power to impose restitution under Act 170 of 1978, it was not owed. However, because $450 had been received under Act 9, it ordered him to pay restitution to the Authority in that amount.

11. Similarly, because the SEC determined that he had received $240 of that amount under Act 170, that amount did not need to be repaid to the Authority. However, because he had received $2,580 in compensation under Act 9, he was required to pay restitution to the Authority in that amount.

12. The SEC also responded to McGuire and Marchitello's contention that they had been selectively prosecuted, stating that the investigations were initiated as a result of complaints that were received against them, and, as such, it was duty bound to review those complaints. Further, the fact that it did not embark upon a "fishing expedition" for other individuals who served as officers for the Authority but for whom complaints had not been received did not mandate the dismissal of the proceedings against McGuire and Marchitello. Additionally, the SEC stated that even though the parties claimed that their monthly meeting pay was approved by the Township Commissioners, it was clear from the evidence that the Authority's budget was not considered or approved separately from the Township's budget, but was, at best, incorporated within the Township's own budget and the Township Commissioners did not approve compensation to Authority members through the mechanism of approving the Authority's budget.

13. Our scope of review of a decision of the SEC is limited to determining whether constitutional rights have been violated, an error of law committed, or whether necessary findings of fact were supported by evidence meeting the standard of proof. *Phillips v. Commonwealth, State Ethics Commission*, 79 Pa.Commonwealth Ct. 491, 470 A.2d 659 (1984).

14. McGuire and Marchitello also contend that the SEC erred in determining that their compensation had not been approved in the budget by the Township Commissioners and that the SEC was guilty of selective prosecution. The SEC, however, argues that while the issue of selective prosecution was preserved for appeal, the first two issues were not preserved because the petition for reviews that were filed by McGuire and

chitello contend that the SEC erred in determining that they had used their public office to obtain personal financial gain. They contend that in order to be in violation of either Section 3(a) of the Act of 1978 or Section 3(a) of the Act of 1989, there must be some action by the public employee, not merely passive, unknowing and inadvertent acceptance of unauthorized compensation. Because the remuneration they received resulted from an erroneous practice in which they did not participate in promulgating, they did not "use" their public offices to obtain personal financial gain.

To further support their contention that some action is required by the public employee in order to violate the Ethics Act, they point to Section 1(a) of the Ethics Act, 65 P.S. § 401(a), which provides that, "The Legislature hereby declares that public office is a public trust and that *any effort* to realize personal financial gain through public office other than compensation provided by law is a violation of that trust." (Emphasis added.) Because they merely accepted the checks, did not intend to realize personal financial gain, and did not put forth any effort at realizing personal financial gain, McGuire and Marchitello argue that they did not violate Section 3(a) of the Ethics Act.

To the contrary, the SEC argues that a public official or employee's acceptance of unauthorized compensation, even by mistake, in and of itself constitutes "use" because it involves action and is not passive as McGuire and Marchitello suggest. In response to questioning, the SEC stated at oral argument that it would require every person who is either a public officer or employee of any public entity covered by the Ethics Act to first review all of the minutes or laws governing compensation and calculate his salary before accepting any compensation. It further argues that intent is not a requisite element necessary to violate the Ethics Act

relying on this court's holding in *Yocabet v. State Ethics Commission,* 109 Pa.Commonwealth Ct. 432, 531 A.2d 536 (1987). In that case, we held that public employees are not entitled to keep excess, unauthorized compensation, even if received in good faith and without intent to violate the Ethics Act.

*Yocabet* involved an individual who voted to appoint himself secretary/treasurer of Luzerne Township in 1980 and 1981 and received compensation for that position those two years without approval from the Township auditors. Even though he had no intent to violate the Ethics Act, because he had appointed himself as secretary/treasurer and received compensation for his office for two years that was not fixed by the Township auditors as required by law, we held that he had used his office for personal financial gain in violation of the Ethics Act. *See also Appeal of Kestler,* 66 Pa.Commonwealth Ct. 1, 444 A.2d 761 (1982), where we held that county officials were only entitled to compensation expressly authorized by statute and were not entitled to keep additional compensation even if received in good faith and without fraudulent intent. However, we do not believe *Yocabet* applies to this case.

■■■ While *Yocabet* does not require intent in order to find a violation of Section 3(a) of the Ethics Act has occurred, it does not mean that a public official does not have to take action to fall within that section's prohibition. Section 3(a) of the Ethics Act requires that a public official "use" his public office to obtain financial gain. "Use", however, is not defined. The SEC's belief that mere acceptance of a check constitutes "use" of a public office reaches beyond the limits of the normal interpretation of that term in the context provided. "Use" of public office requires action by a public official that in some way facilitates his receipt of compensation to which he is not entitled, such as in *Yocabet* where the individual voted to increase his

---

Marchitello failed to specifically raise the issues now before this court as required by Pa.R.A.P. 1513(a), and instead, made sweeping assertions regarding the SEC's determination that they violated Section 3(a) of the Ethics Act. Because Pa.R.A.P. 1513(a) only requires a general statement of the objections to the determination and also provides that the statement of objections will

be deemed to include every subsidiary question fairly comprised therein, based on our review of those petitions, McGuire and Marchitello have complied with that requirement. *See Chene v. Workmen's Compensation Appeal Board (Giant Eagle, Inc.),* 159 Pa.Commonwealth Ct. 229, 632 A.2d 1058 (1993).

own salary without having authority to do so. Mere mistaken acceptance by a public official of a compensation check in an amount that was determined prior to his term in office is devoid of the type of action needed to constitute "use" of office for the purpose of obtaining personal financial gain.

Applying that rationale to this case, there was no action taken by either McGuire or Marchitello regarding the monthly meeting pay they received. The SEC determined that all of the compensation they received, including compensation for attending the Authority board meetings, was based on amounts that were determined prior to the time they were members of the Board. As such, they merely accepted what was given to them and did not use their office for personal financial gain. While there may be a cause of action by the Authority or the Township to recover funds mistakenly paid and received, the excess compensation McGuire received in the amount of $3,375 and Marchitello received in the amount of $7,020 for monthly meeting pay was not obtained in violation of the Ethics Act.[15]

Accordingly, the decisions of the SEC finding that McGuire and Marchitello were in violation of Section 3(a) of Act 170 and Section 3(a) of Act 9 are reversed.

### ORDER

AND NOW, this 18th day of April, 1995, the orders of the State Ethics Commission, No. 944, dated September 12, 1994, and No. 945, dated September 12, 1994, are reversed.

15. Because we have determined that neither McGuire nor Marchitello violated either Section 3(a) of Act 170 or Section 3(a) of Act 9, we need not address their arguments regarding selective prosecution by the SEC or whether their compensation was authorized by the Township Commissioners.