Judith KRAINES, Petitioner,

v.

PENNSYLVANIA STATE ETHICS
COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued July 10, 2002.
Decided Aug. 23, 2002.

Thomas J. Weber, Harrisburg, for petitioner.

John M. Shugars, Harrisburg, for respondent.

Before McGINLEY, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Judith Kraines (Kraines) petitions for review of an order of the State Ethics Commission (Commission) finding that she violated the Public Official and Employee Ethics Act (Ethics Act) while serving as County Controller for Berks County. We reverse.

The instant matter was initiated by the Investigative Division of the Commission following an allegation of ethical impropriety. The investigative complaint alleged that Kraines used the authority of her office for the private pecuniary benefit of a member of her immediate family by approving payments via her stamped signature on county checks to her spouse for pathologist fees which were in excess of amounts set forth in the contract between her spouse and Berks County (County). Kraines filed an answer to the investigative complaint and requested an administrative hearing. Hearings before the Commission were held on June 20, June 21 and September 5, 2001.

The parties stipulated to certain facts, the introduction of documents and the testimony of several witnesses. This evidence is summarized as follows. Kraines has served as the Berks County Controller since January 1996. Kraines is married to Dr. Neil A. Hoffman, M.D. Dr. Hoffman is a board certified forensic pathologist and is the only board certified forensic pathologist in Berks County. Dr. Hoffman and other pathologists from the Reading Hospital and Medical Center have been used by the County Coroner's office to perform autopsy and other pathology services since approximately 1979.

In 1989, Dr. Hoffman entered into a contract with the County to provide certain services, referred to as "contracted services" for a retainer of $7,000 per year to cover external examinations, scene examinations, consultations, autopsy reviews, quality control of cases, professional referrals, staff instruction, and medical opinions for attorneys and insurance companies. Non-contracted services (services not covered by the annual retainer) were identified as standard autopsies, forensic autopsies, x-rays, toxicology, specialized lab work and court appearance fees. Non-contracted services were to be paid at the following agreed upon rates: (1) standard autopsy—$380; (2) forensic autopsy—$450; (3) x-rays, toxicology and specialized—as charged; and (4) court appearances-$200 per appearance plus $75 per

hour after the first two hours. The contract had an automatic renewal clause with any changes or notice of cancellation having to be made on or before December 15th of each year. This contract was approved by the County Commissioners. This contract pre-dates Kraines' tenure as County Controller.

The autopsy work was performed by Dr. Hoffman and other pathologists at the direction of Coroner William Fatora on a rotational and as needed basis. The County paid Dr. Hoffman and the other pathologists the same rate for performing autopsies and other "non-contracted services." In 1995, Dr. Hoffman approached Coroner Fatora about increasing the forensic autopsy rates from $450 to $600 per autopsy for all pathologists performing autopsies for the county. Dr. Hoffman requested the increase because other pathologists were charging approximately double the amount charged to Berks County per autopsy. Coroner Fatora approved the increase and Dr. Hoffman and other pathologists began invoicing the County at the rate of $600 per autopsy. No amendments were made to the 1989 contract and the County Commissioners did not approve the increase by resolution at a public meeting. This rate increase was not challenged by Kraines' predecessor.[1] When Kraines took office in January 1996, Dr. Hoffman and the other pathologists were still invoicing the County at the rate of $600. Kraines' office continued to process Dr. Hoffman's invoices along with other County bills.

In March 1998, Dr. Hoffman again approached Coroner Fatora about increasing the forensic autopsy rates from $600 to $800 for all pathologists. Coroner Fatora approved the increase and Dr. Hoffman and other pathologists began invoicing the County at the rate of $800 per autopsy. Again, no amendments were made to the 1989 contract and the County Commissioners did not approve the increase by resolution at a public meeting. Per the 1989 contract, Dr. Hoffman continued to receive the $7,000 annual retainer for contracted services.

The fees charged by Dr. Hoffman and the other pathologists were at all times relevant hereto below market value. The fees charged by Dr. Hoffman and the other pathologists represent a cost savings to Berks County in comparison to fees charged by other pathologists in South Central Pennsylvania. All services invoiced by Dr. Hoffman were performed in an efficient and professional manner. In terms of autopsy fees, Dr. Hoffman was not treated any differently than the other licensed pathologist working at Reading Hospital.

Invoices from Dr. Hoffman and other pathologists were submitted to the Coroner's office for payment. Coroner Fatora prepared a monthly report detailing each invoice and sent the report to the County Commissioners, the Budget Director and the Controller, who would then review the invoices. Once approved, the invoices were forwarded to the County Controller's office for payment. Kraines, in her official capacity as Controller, participated in this process by issuing payments to Dr. Hoffman and other pathologists for autopsy services. Printed checks include computer-generated signatures of at least two commissioners, the Controller and treasurer. The County Controller's signature must be affixed to all checks issued for payment of county bills.

---

1. This Court takes notice that the amount of all invoices submitted to Berks County required the affirmed concurrence of the office holder for whom the services were performed and the County Commissioners.

Based upon the testimony and evidence presented, the Commission issued the following findings. Kraines, as County Controller, was responsible for ensuring that amounts paid are consistent with County contracts. Kraines did not compare whether payments made to her husband for autopsies were consistent with the terms of the 1989 contract. Dr. Hoffman was paid fees in excess of the amounts set forth in the 1989 contract. Kraines' signature was affixed to 57 checks issued to her spouse between 1996 and 2000. When Kraines assumed office of Controller, she was warned of the potential conflict of interest in processing claims for autopsy fees submitted by her spouse. Kraines' actions resulted in private pecuniary benefits to her spouse.

On November 30, 2001, the Commission issued a final adjudication finding that Kraines in her position as County Controller committed a technical violation of Section 1103(a) of the Ethics Act, 65 Pa.C.S. § 1103(a), by using the authority of her office for the private pecuniary benefit of a member of her family by her participation in the approval process of payments to her husband for pathology fees which were in excess in the amounts set forth in the 1989 contract between Dr. Hoffman and the County. The Commission determined that under the totality of the circumstances, the imposition of restitution was not warranted in the case.[2] From this decision, Kraines now petitions for review with this Court. Kraines raises the following issues for our review:

1. Whether Kraines committed a violation of the Ethics Act as a result of payments made to her husband which were in the exact same amount as pay-

ments made to all members of her husband's occupation.

a. Whether Kraines used her public office for the receipt by her husband of improper pecuniary benefits to which her husband was not entitled.

b. Whether Kraines' husband was a member of a subclass, industry or occupation in relation to work he performed on behalf of, and payments he received from, the County.

c. Whether the payments received by Kraines' husband had an insignificant adverse economic impact on the County and, therefore, should have been classified as *de minimis.*

■ We initially note that this Court's scope of review of a Commission adjudication is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed, or whether the findings of the Commission are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pulice v. State Ethics Commission,* 713 A.2d 161 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 557 Pa. 642, 732 A.2d 1211 (1998). Substantial evidence is such relevant evidence as a reasonable person would consider adequate to support the finding. *Id.* After the facts are found to be supported by substantial evidence, this Court must then consider whether all the facts found by the Commission are "clear and convincing proof" that the public official violated the Ethics Act. *Id.*

■ First, Kraines contends that the Commission erred in finding a violation of Section 1103(a) of the Ethics Act on the basis that she used her public office for the

---

**2.** The Commission dismissed two other alleged violations that Kraines violated Section 1103(f) of the Ethics Act for lack of the use of authority of her office because the original contract between her spouse and the County for payment of pathology fees pre-dated her election as Controller and did not involved the Office of Controller.

receipt by her husband of improper pecuniary benefits to which her husband was not entitled. We agree.

The Ethics Act specifically prohibits a public official from using the authority of her office in order to obtain a private pecuniary benefit for a member of her immediate family, including spouse. Section 1103(a) of the Ethics Act provides that "[n]o public official or public employee shall engage in conduct that constitutes a conflict of interest." Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102, defines "conflict" or "conflict of interest" as:

Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated.

■ In order for a public official to violate Section 1103(a), this Court has emphasized that the public official must "use" his public office to obtain financial gain. *McGuire v. State Ethics Commission,* 657 A.2d 1346, 1351 (Pa.Cmwlth.1995). "Use", however, is not defined by the Ethics Act. This Court has held that "use" of public office requires action by a public official that in some way facilitates his receipt of compensation to which he is not entitled. *Id.*

■ Based upon our review of the record, Kraines did not *"use"* her public office for the receipt by her husband of improper pecuniary benefits to which her husband was not entitled. Dr. Hoffman had been performing autopsies at the discretion of the County Coroner years before Kraines, his wife, was elected County Controller. Kraines did not have any involvement in the Coroner's decision to utilize the services of her husband. Kraines did not have any involvement in the amount her husband and other pathologists were paid. Upon assuming office, Kraines made a public disclosure of her marital relationship to Dr. Hoffman and publicly noted that he performed services on behalf of the Coroner's office. At all time that Kraines has been in office, the payment received by her husband for autopsies was the exact same rate as that received by all other pathologists performing autopsies for the County Coroner. Dr. Hoffman performed the autopsies for the County and was entitled to all payments he received for autopsies. Although the Commission maintains that Dr. Hoffman was only entitled to the amounts set forth in the 1989 contract, the contract specifically provided that the autopsies were a non-contracted item. Based upon the testimony and evidence presented, the flat autopsy rate was renegotiated and approved by the Coroner. The autopsy invoices at the new rate were reviewed and approved by the Coroner, the Budget Director and the Commissioners. While Kraines approved payments via her stamped signature on County checks to her husband for pathologist fees, such action in and of itself does not constitute an ethics violation as Dr. Hoffman was entitled to these fees.

■ Second, Kraines contends that the Commission erred in finding a violation of Section 1103(a) of the Ethics Act as the findings, as found by the Commission,

demonstrate that her husband was a member of a subclass, industry or occupation in relation to work he performed on behalf of, and payments he received from, the County. We agree.

The definition of "conflict of interest" does not include an action *"which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated."* Section 1102 of the Ethics Act (emphasis added). In *Pulice,* 713 A.2d 161, the Commission ruled that the president of the township school district board of directors violated the Ethics Act by engaging in conduct that constituted a conflict of interest by participating in personnel committee meetings to create a new administrative position of Assistant Principal/Athletic Director and participating in the official board action of voting on the appointment of his son-in-law to this newly created position at a salary higher than son-in-law was making as Teacher/Athletic Director/Summer School Director. The Commission concluded, *inter alia,* that the president's daughter received a "private pecuniary benefit" from the son-in-law's salary increase when he deposited it in a joint account which had been used for many years before to pay joint expenses. On appeal, this Court reversed. Specifically, this Court determined that the compensation paid to the son-in-law did not constitute a pecuniary benefit for purposes of the Ethics Act because the amount of the salary increase affected every member of the class of school administrators classified as "Assistant Principal/Athletic Director" to the same degree. *Id.* The increase was not in the form of a bonus or other individual increase to the son-in-law. *Id.*

Herein, Kraines' husband was a member of a subclass, industry or occupation in relation to work he performed on behalf of and payments he received from the County. Although the Commission maintains that Dr. Hoffman was in a class to himself as Dr. Hoffman was the only board-certified pathologist for the County and was the only pathologist who had a contract with the County, this distinction is illusory and does not separate Dr. Hoffman from the other members of his occupation—the pathologists at Reading Hospital performing autopsies for the County Coroner. Dr. Hoffman received the **same** payment as all other members of his occupation for performing autopsies. The record is void of any preferential treatment Dr. Hoffman received. Although Dr. Hoffman had a contract with the County, the contract specifically listed autopsies as "non-contract services". The intent of the parties, as evidenced by the testimony offered, was that the autopsies were outside the scope of the contract. We, therefore, conclude that the class/subclass exclusion to the statutory definition of "conflict of interest" applies to Dr. Hoffman, thereby negating a violation of Section 1103(a).

■ Lastly, Kraines contends that the Commission erred in finding a violation of Section 1103(a) of the Ethics Act when the payments received by her husband had an insignificant adverse economic impact on the County and, therefore, should have been classified as *de minimis.* We agree.

The definition of "conflict of interest" does not include *"an action having a de minimis economic impact"*. Section 1102 of the Ethics Act (emphasis added). De minimis economic impact means an economic consequence which has an insignificant effect. *Id.*

Herein, Dr. Hoffman was the only board certified forensic pathologist in Berks

County and was the most qualified pathologist in death investigations in Berks County. As the most qualified pathologist, Dr. Hoffman received the most difficult cases, but was paid the same amount as other pathologists. The record shows that Dr. Hoffman and the other pathologists were underpaid for their services. The fees charged by Dr. Hoffman and the other pathologists represent a cost savings to Berks County in comparison to fees charged by other pathologists in South Central Pennsylvania. The record further demonstrates that Dr. Hoffman performed the work for which he was paid and performed it well. Given these facts, the County suffered no adverse economic consequences and thus, any economic impact is clearly *de minimis*.

Accordingly, the order of the Commission is reversed.

### ORDER

AND NOW, this *23rd* day of *August*, 2002, the order of the State Ethics Commission, at Docket No. 00–039–C2, dated November 30, 2001, is hereby reversed.