Selma RUSSELL, Petitioner

v.

STATE ETHICS COMMISSION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 2009.
Decided Dec. 17, 2009.

Douglas S. Sepic, Connellsville, for petitioner.

Mary W. Fox, Harrisburg, for respondent.

BEFORE: SIMPSON, Judge, and FRIEDMAN, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Selma Russell (Russell), a board member for the Municipal Water Authority of Washington Township (Authority) petitions for review from a final adjudication of the State Ethics Commission (Commission) which determined that Russell violated Section 1103(a) of the Public Official and Employee Ethics Act (Act), 65 Pa.C.S. § 1103(a) when she received compensation which was not provided for by law, by participating in actions of the Authority board to authorize the expenditure of Authority funds for compensation in excess of that approved by the Washington Township Supervisors (Supervisors). The Commission also determined that Russell violated Section 1103(a) of the Act, 65 Pa.C.S. § 1103(a), by accepting an increase in compensation prior to the beginning of a new term of office. The Commission ordered Russell to pay $5,025.00 in restitution. We affirm.

The stipulations and/or pleadings set forth in the Commission's findings are not contested by Russell and are as follows. The Supervisors created the Authority in 1952, pursuant to the Municipality Authorities Act.[1] Since 1999, the Authority has been a joint Authority responsible for both sewage and water. The Authority is governed by a seven member board.

From at least mid–1999 through February of 2000, both water and sewage issues were discussed at the same Authority board meeting. Russell began serving as a board member for the Authority on January 4, 2000. At various times she served as secretary and assistant secretary/treasurer.[2]

From approximately March of 2000 and on going, the Authority board has conducted two separate meetings on published meeting nights, which have been referred to as the "water portion" and the "sewage portion" of the meeting. Such meetings have been consecutively held on the same date and at the same location. The second meeting would commence immediately after the first meeting would adjourn. From March of 2000 through March of 2001, board members who attended the meetings received only one check as payment for both meetings.

In April of 2001, Russell and other board members began receiving two checks per meeting night, with one check being for the water meeting and the additional check being for the sewage meeting. No official vote was taken by the board authorizing the issuance of an additional

1. Municipality Authorities Act, 53 Pa.C.S. §§ 5601–5623. The act adding this law also replaced and repealed the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, as amended, formerly 53 P.S. §§ 301–322, repealed by Section 3 of the Act of June 19, 2001, P.L. 287.

2. Russell served as the Authority's assistant secretary/treasurer from January 4, 2000 to February 27, 2007, except for year 2004. Russell served as the Authority's assistant secretary in 2004 and as secretary from February 27, 2007 to January 12, 2008.

check, nor was any action taken by the Supervisors authorizing issuance of the second check. The board members accepted the additional check without seeking advice from the Supervisors, the appointing authority.

Payments for the board members' attendance at the Authority's water meetings were issued from the general fund account, while checks representative of the board members' attendance at the Authority's sewage meetings were issued from the Authority's sewage account. Russell participated in actions as an Authority board member in approving monthly bill lists on which payments received for attendance at the water portion of the Authority's meetings were discussed. Russell also participated in actions as an Authority board member in approving monthly bill lists on which payments received for attendance at the sewage portion of the meetings were discussed.

At the January 7, 2002 reorganization meeting of the Supervisors, the compensation set for the Authority board members was increased from $50 per meeting to $75.00 per meeting. The motion to increase the compensation identified the board members as officials for a single Authority. "Motion by John Yetsconish, second by Melvin Weiss to increase salaries of Board Members of Water & Sewage Authority to Seventy five ($75.00) dollars per meeting. Motion carried." (Appendix I–24.) The motion did not include any language expressly authorizing payments for two separate meetings.

In July of 2003, the Authority board members amended the bylaws to reflect that they were holding a "sewage portion of meeting." The by-laws do not describe the sewage portion of the meeting as a second or additional meeting.

The published notices of the Authority board which provided public notice for its regular meetings for the years 2003 through 2007, did not mention a separate sewage meeting or list a separate time for a sewage meeting.

In May of 2007, the investigative division of the Commission informed Russell that a complaint had been filed against her and that a full investigation was being commenced. In July of 2007, the Authority members elected to stop receiving two payments for the single meeting, based on the advice of the Authority's newly appointed solicitor.

■ Based on the above, the Commission determined that Russell violated Section 1103(a) of the Act when she received compensation (separate sewage check), which was not authorized for by law, by participating in actions of the Authority board to authorize the expenditure of the Authority's funds for compensation to board members in excess of that approved by the Supervisors.[3] Additionally, the Commission concluded that Russell violated Section 1103(a) of the Act in relation to her acceptance of an increase in compensation prior to the beginning of a new term in office. Specifically, at the January 7, 2002 reorganization meeting, the Supervisors increased the compensation for Authority board members from $50.00 per meeting to $75.00 per meeting. However, pursuant to the Municipality Authorities Act, Russell was not eligible to receive the increase in compensation until the beginning of her second full term in January of 2005. The trial court, in addition to con-

---

**3.** Section 1103(a) of the Act provides, in pertinent part:

    **1103. Restricted activities**

    **(a) Conflict of interest.**—No public official or public employee shall engage in conduct that constitutes a conflict of interest.

cluding that Russell violated Section 1103(a) of the Act, also ordered that Russell pay $5,025.00 in restitution. This appeal followed.[4]

■ Initially, we address the issue of whether the separate compensation that Russell received for her attendance at the water and sewage portions of the Authority meetings was authorized.

Russell claims that in March of 2000, the Authority board began holding its meetings in two segments, the "water meeting" and the "sewage meeting." Article III, Section 5 of the By–Laws of the Authority called for the "sewage" portion of the meeting to be held separately from other Authority business,[5] (R.R. at 169.) According to Russell, it is not contested that after the water portion of the meeting was closed, the sewage portion of the meeting was held immediately thereafter, at the same location.

Russell maintains that the question before the Commission did not turn on whether the water and sewage segments of the Authority's regular monthly meeting were separate "meetings", but whether the Supervisors intended to compensate the members of the Authority, and for which meetings the Supervisors intended to compensate the Authority members. Russell maintains that it was the clear intention of the Supervisors to separately compensate the Authority board members for the water portion of the meeting and the sewage portion of the meeting.

Russell points to the testimony of Supervisor John Yetsconish (Yetsconish). Although he initially testified that at the time he made the motion for the increase in compensation he was not aware that the board members were getting two separate checks per meeting night, he further testified as to the intent of the Supervisors as follows:

Q. Right. Do you recall how you became aware that the Authority Board was separating their monthly meetings into two portions, water and sewage?

A. You know, I have attended so where they had the water meeting and the sewage meeting after it, but, you know, I never knew about what pay structure they had or—I guess I found out at the end.

Q. Okay. Thank you. Would you say it was your intention that the Authority members have separate meetings for each of their responsibilities?

A. I would think—you know, meeting with Belle Vernon and the other commu-

---

4. This court's review of a Commission adjudication is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of the Commission are supported by substantial evidence. *Pulice v. State Ethics Commission*, 713 A.2d 161 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 557 Pa. 642, 732 A.2d 1211 (1998).

5. Article III, Section 5 of the Authority's By–Laws states:
   SECTION 5  ORDER OF BUSINESS
   At the regular meeting of the Authority, the following shall be the order of business:
   1. Call To Order
   2. Pledge To the Flag
   3. Roll Call
   4. Open Forum
   5. Minutes
   6. Treasurer's Report
   7. Manager's Report
   8. Engineer's Report
   9. Solicitor's Report
   10. Old Business
   11. New Business
   12. Adjournment
   *Sewage Portion of Meeting*
   1. Call To Order
   2. Engineer's Report
   3. Open Forum
   4. Adjournment

nities in the DEP, you know, that was the intent, you know.

(R.R. at 69, 70.)

Joanne Latkanich (Latkanich), was also a Supervisor during the relevant time frame, along with Yetsconish and Melvin Weiss (Weiss). Latkanich testified that although she was not present at the reorganization meeting held in January of 2002, prior to the meeting, the Supervisors discussed increasing the compensation of the Authority members and she was fully aware of the procedure by which the Authority conducted its meetings, by first holding the water portion and then the sewage portion. She stated:

A. The discussion was that they would get paid $75, which would have been an increase from $50 to $75, that they would be paid the $75 per meeting. $75 per water and $75 per sewage.

(R.R. at 145.) [6]

Based on the above testimony, Russell argues that it was the intention of the Supervisors that Authority board members be compensated separately for the water and sewage segments of the Authority's meetings. As acknowledged by Yetsconish and Latkanich, they understood that the Authority conducted a water portion of the meeting and a sewage portion of the meeting and that it was the intent of the Supervisors to compensate Authority board members for both. Also, it would be beyond reason for the Commission to argue that Weiss did not intend for Authority board members to be compensated separately for the water and sewage segments, which is how he received his compensation as a member of the Authority. Weiss obviously viewed the water and sewage portions as two separate meetings.

According to Russell, the Commission's determination that she was not permitted to receive separate compensation for the water and sewage portion of the meeting is not supported by substantial evidence.

▬▬ Substantial evidence is such relevant evidence as a reasonable person would consider adequate to support a finding. *Pulice.* If the facts are found to be supported by substantial evidence, this court must then consider whether all the facts found by the Commission are "clear and convincing proof" that the public official violated the Act. *Id.* As to the credibility of witnesses and the weighing of evidence, such is a proper function of the Commission. *Bouch v. State Ethics Commission,* 848 A.2d 1078 (Pa.Cmwlth.2004).

The Commission initially responds that the By–Laws only reference a singular "regular meeting of the Authority." Moreover, there was but one meeting which addressed a number of issues, including water and sewage, and the Authority did not have a true break or adjournment between the handling of water and sewer issues. Such meetings were advertised as one meeting, without mention of separate meetings. Issues were intertwined and, in fact, the Solicitor was paid for just one meeting.

The Commission cites to *Rebottini v. State Ethics Commission,* 160 Pa.Cmwlth. 157, 634 A.2d 743 *petition for allowance of appeal denied,* 539 Pa. 682, 652 A.2d 1327 (1994), wherein board members of a municipal authority attempted to circumvent the requirements that the authority board member salaries be set by the authority's governing bodies by creating paid officer positions and appointing themselves to

---

**6.** Weiss, while serving as a Supervisor, also served as a member of the Authority. Like Russell, Weiss accepted compensation increases prior to the beginning of a new term of office as an Authority board member and also accepted a separate payment for the sewage portion of the meeting. Weiss did not testify before the Commission.

such positions. This court stated that, "[t]he record plainly shows that the [authority] board members desired to be paid for their services, that they adopted Painter's [one of the authority board member's] 'vehicle for simplicity' and created six new officer positions, then gave each board member a paid officer position." *Id.* at 747. This court further stated that "[t]his is an abuse of public office and is precisely the type of conduct which the Act was intended to prevent." *Id.*

Moreover, we observe that Section 5610 of the Municipality Authorities Act explicitly provides that the Supervisors are to set the compensation for Russell and other Authority board members. That section provides:

> (d) SUCCESSOR.___ Members ... shall receive such salaries as may be determined by the governing body of the municipality, but no salaries shall be increased or diminished by a governing body during the term for which the member shall have been appointed.

Here, the Supervisors never approved two payments for the Authority meetings, either directly by official action, or indirectly by tacit approval.

Substantial evidence supports the determination that Russell violated the Act. Specifically, Yetsconish testified that he was not aware that the Authority board members were receiving two payments for one meeting when he voted to increase the compensation of the Authority board members from $50.00 to $75.00.

Additionally, Mark Ramsier (Ramsier), the Authority solicitor, testified that he was not aware of, and never provided, a formal opinion concerning whether Authority board members could collect two payments per meeting. He further testified that he attended the same Authority meetings and received only one check, not two, which the Authority board members were receiving.

■ Next, we address the issue of whether Russell's actions when she voted to approve payments to herself and other Authority board members, constituted a conflict of interest.

Russell claims that irrespective of whether she was actually permitted to receive separate compensation for separate portions of the Authority's meeting, Russell's actions did not constitute a conflict of interest as defined by the Act.

The term "conflict of interest" is defined in Section 1102 of the Act as follows:

> **"Conflict" or "conflict of interest."** Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefits of himself, a member of his immediate family or a business which he or a member of his immediate family is associated. The term does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated.

Russell points out that "conflict of interest" specifically excludes an action which affects to the same degree, a subclass consisting of a group which includes the public official. According to Russell, her actions do not constitute a conflict because the action of voting on and approving monthly billings lists, which included separate compensation for the water and sewage portions of the Authority meeting, likewise

affected, to an equal degree, the other Authority members who, likewise, received separate compensation for water and sewage meetings. All Authority members, including Russell, were treated the same, as each received separate compensation for water and sewage meetings from April of 2001 until July of 2007.

In *Kraines v. Pennsylvania State Ethics Commission,* 805 A.2d 677 (Pa.Cmwlth. 2002), *petition for allowance of appeal denied,* 572 Pa. 761, 818 A.2d 506 (2003), Kraines' husband was a pathologist performing services for the county. The Commission alleged that Kraines used the authority of her office as a county controller for private pecuniary benefit for a member of her family by approving payments to her husband. This court determined that contrary to the Commission's findings, Kraines did not violate Section 1103(a) of the Act. According to the court, Kraines' husband was a member of a subclass, industry or occupation in relation to work he performed for the county and payments he received from the county. Kraines' husband received the same payment as all other members of his occupation for performing autopsies. There was no conflict of interest.

Although *Kraines* is factually distinguishable, Russell claims she was treated the same as all other members of the Authority, in that she received the same compensation as other Authority board members. Thus, Russell maintains there was no conflict of interest.

■ We agree with the Commission, however, that Russell engaged in a conflict of interest when she authorized payments to herself in excess of what was set by the

Supervisors. Moreover, for the class/subclass exception to apply, the underlying action that the public official or public employee desires to take must be a legal action. This exception does not make an otherwise illegal action legal.[7]

Moreover, Russell clearly violated the Act when she accepted an increase in her pay during the term of her office in violation of Section 5610 of the Municipality Authorities Act, 53 Pa.C.S. § 5610.[8]

In accordance with the above, the decision of the Commission is affirmed.

### *ORDER*

Now, December 17, 2009, the decision of the State Ethics Commission, in the above-captioned matter, is affirmed.

7. Russell's interpretation, if taken as true, would allow public officials to take illegal actions so long as all the public officials involved would benefit equally from such actions.

8. At oral argument, counsel for Russell did not dispute that Russell accepted an increase in her pay during the term of her office.