541 A.2d 811

Nemacolin, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued March 22, 1988, before Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three.

*Peter U. Hook,* for petitioner.

*Katherine S. Dunlop,* Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, April 26, 1988:

Nemacolin, Inc. (Nemacolin) appeals from an order of the Environmental Hearing Board (board) granting the request for summary judgment of the Department of Environmental Resources (DER) and denying Nemacolin's appeal from a DER order directing that a swimming pool operated by Nemacolin be closed and drained and remain so until such time as Nemacolin secured a permit from DER to operate the pool.

The issues presented are (1) whether Nemacolin is precluded from arguing in this enforcement proceeding appeal that the statutory permit requirement does not apply to this pool by virtue of Nemacolin's failure to appeal DER's initial denial of the permit; (2) if Nemacolin is not so precluded, whether the statutory exclusion of condominium swimming pools from the definition of "public bathing place," except with respect to certain enumerated concerns, exempts such pools from the general permit requirement; (3) if it does, whether the design of the structure of a pool falls under DER's ex-

press statutory authority to regulate "safety equipment" at condominium swimming pools, and (4) if the "safety equipment" exception does not apply, whether DER has the authority to disapprove the design of the structure and to stop the operation of this pool under a general mandate to abate nuisances.

## History

The material facts are not in dispute.[1] In the summer of 1985 Nemacolin built a swimming pool on land in Fayette County commonly known as Nemacolin Woodlands. Nemacolin operated and maintained the pool on behalf of the Maples Condominium and the Laurel Pond Condominium for the exclusive use of residents of the condominiums and their guests. The pool is twenty-six feet wide and fifty feet long, with no diving board.

On July 29, 1985, after the pool was built, Nemacolin filed an application with DER for a Bathing Place Permit under the Public Bathing Law, Act of June 23, 1931, P.L. 899, *as amended,* 35 P.S. §§672-680d. DER denied the application, on September 20, 1985, because the pool's design included a slope that began at a point less than six feet from the water surface, a so-called "hopper bottom," in violation of section 2.6.5.1 of DER's Bathing Place Manual.[2] Nemacolin did not ap-

---

[1] As the board noted in its opinion, Nemacolin admitted all of the material facts relating to the construction of the swimming pool and to the earlier denial of its application for a permit in its answer to DER's motion for summary judgment or to limit issues. Nemacolin does not contend here that the board's disposing of this matter on summary judgment was inappropriate under these circumstances. *See e.g., Summerhill Borough v. Department of Environmental Resources,* 34 Pa. Commonwealth Ct. 574, 383 A.2d 1320 (1978).

[2] DER's revelant regulation provides: "The Department's pamphlet, 'Bathing Place Manual,' Bureau of Sanitary Engineering

peal that denial. Nemacolin did, however, continue to operate the pool.

On August 22, 1986, DER entered the order referred to above requiring the closing and draining of the pool, and Nemacolin appealed that order to the board. The board affirmed in its order of April 28, 1987, granting summary judgment in favor of DER on the basis of its conclusions (1) that the legislature, even after a 1979 amendment, intended the permit requirement of section 5 of the Public Bathing Law, 35 P.S. §676, to continue to apply to condominium swimming pools because of DER's continued power to regulate broad areas of their operation, and (2) that the "hopper bottom" design of the structure of this pool falls within the scope of DER's continued power to regulate "safety equipment" at condominium pools under section 2(1) of the law, 35 P.S. §673(1). Nemacolin has appealed that decision.

## Preclusion

DER contends that the principle of finality of administrative decisions precludes a party who has not appealed from an initial order of an administrative agency from later challenging collaterally in an enforcement proceeding the factual or legal basis for that initial order. In support of this proposition DER cites *Commonwealth v. Derry Township,* 466 Pa. 31, 351 A.2d 606 (1976) and *Department of Environmental Resources v.*

---

Publication No. 16, may be used as a guide for determining compliance with the provisions of §§ 193.11-193.17 of this Title (relating to permits)." 25 Pa. Code §193.14.

Section 2.6.5.1 of the Bathing Place Manual states: "Walls of pools should be vertical for a minimum depth of at least six feet below the water level, but the walls may have a slope of not more than one horizontal to five vertical. Below this point the wall may be curved with a radius equal to the difference between the depth and six feet."

*Wheeling-Pittsburgh Steel Corporation,* 22 Pa. Commonwealth Ct. 280, 348 A.2d 765 (1975), *aff'd and remanded,* 473 Pa. 432, 375 A.2d 320, *cert. denied,* 434 U.S. 969 (1977).

These cases do indeed stand for the quoted proposition; however, that proposition does not apply to the present circumstances. Although the permit denial involved in the present case was an appealable adjudication, it was not an "order" to Nemacolin within meaning of the *Derry Township* line of cases. Unlike the orders involved in *Derry Township, Wheeling-Pittsburgh Steel* and other cases applying this principle, the permit denial involved here did not order Nemacolin to do or to refrain from doing anything. The denial did not alter the status quo in any manner; it did not create any new obligation or burden that was binding upon Nemacolin. Therefore, Nemacolin was not "aggrieved" by the permit denial. *See Wheeling-Pittsburgh Steel,* 22 Pa. Commonwealth Ct. at 284, 348 A.2d at 767. Consequently, the duty to appeal or forever forego any challenge to the factual or legal basis for the administrative action was not triggered.

Rather, Nemacolin's position was the same after the denial of the permit as it was before. Nemacolin remained under a general obligation not to operate this pool without a permit *if a permit were required.* That *general obligation* is what DER is attempting to enforce in this proceeding, not any particular duty on Nemacolin's part arising from the unappealed permit denial. Therefore, Nemacolin is not precluded, because of its failure to appeal from the permit denial, from arguing here that the permit requirement does not apply to this pool.[3]

---

[3] DER also asserts that Nemacolin could have raised the claims it makes here in the application proceeding. However, that assertion is not correct, because Nemacolin could not consistently

## Permit Requirement

Section 5(a) of the Public Bathing Law, 35 P.S. §676(a), provides as follows regarding the need for permits:

> It shall be unlawful for any person or persons, club, firm, corporation, partnership, institution, association, municipality or county to construct, add to or modify, or to operate, or continue to operate, any public bath house, bathing, swimming place or swimming pool, natatorium, or any structure intended to be used for bathing or swimming purposes, indoors or outdoors, without having first obtained a permit to do so or being in possession of an unrevoked permit.

Before 1979, section 2(1) of the Public Bathing Law, 35 P.S. §673(1) defined "public bathing place" in very broad terms:

> A public bathing place shall mean any place open to the public for amateur and professional swimming or recreative bathing, whether or not a fee is charged for admission or for the use of said place, or any part thereof.

Section 2(1), was amended by the Act of July 12, 1979, P.L. 93, adding the following language:

> *Except with respect to the regulation of* water supply and content, hygiene and plumbing and electrical facilities, and *safety equipment, a public bathing place shall not include a swimming pool* owned and *operated for the exclusive use* and enjoyment *of residents of a condominium* or

---

both ask DER for a permit and at the same time contend that no permit was required. Such a request would amount to asking the agency to perform an ultra vires act.

cooperative or their personal guests. (Emphasis added.)[4]

Both parties to this dispute acknowledge that the language of the amendment is ambiguous. Because of that ambiguity, the Statutory Construction Act permits the interpreting body to consider, among other things, "[t]he contemporaneous legislative history [of the statute]," 1 Pa. C. S. §1921(c)(7), for the purpose of ascertaining the intent of the legislature. The Environmental Hearing Board stated in its opinion that it was particularly persuaded in this case by DER's argument that the comments of one member on the floor of the House of Representatives—to the effect that the only change the bill would accomplish would be to exempt condominium pool owners from the requirement of having a lifeguard on duty—demonstrated an intent by the legislature to maintain regulation by DER over condominium pools in all other respects. However, the board erred in relying on those comments, because the Supreme Court has held that "what is said on the floor of the House or the Senate should not be relied upon in formulating legislative intent." *Commonwealth v. Alcoa Properties, Inc.*, 440 Pa. 42, 46 n.1, 269 A.2d 748, 749 n.1 (1970), and this court has recognized that floor debates do not constitute legislative history for purposes of statutory interpretation. *Crawl v. Pennsylvania*

---

[4] Section 2(1) was amended to its current form in 1984 by a modification of the sentence added in 1979, as follows:

Except with respect to the regulation of water supply and content, hygiene and plumbing and electrical facilities, and safety equipment, a public bathing place shall not include a swimming pool, lake or pond owned, operated and maintained for the exclusive use and enjoyment of residents of a condominium or cooperative or members of a propertyowners association or the personal guests of such residents or members.

Act of July 9, 1984, P.L. 662.

*Housing Finance Agency,* 98 Pa. Commonwealth Ct. 431, 437 n.7, 511 A.2d 924, 927 n.7 (1986).

In our view, a statutory amendment that removes entire categories from the definition of the subject matter covered by the statute must have been intended by the legislature to accomplish more than minor tinkering with the applicability of a single regulation. We cannot accept the thesis that the legislature, having expressly removed condominium pools from the definition of "public bathing place," then, through exceptions, intended to restore all previous aspects of regulation except with relation to lifeguards. To do so, rather than simply to say that condominium pools are exempt from the lifeguard regulation, would be a roundabout approach to legislating, to say the least.[5]

Rather, such a fundamental change in the definition of "public bathing place" appears to reflect a legislative policy decision to treat pools maintained and operated for the exclusive use of condominium residents and their guests more like private residential pools than like facilities open to the public. What we are construing is, after all, the *Public* Bathing Law,[6] and the particular section with which we are concerned seeks to differentiate between "public" bathing places and all others, which are presumably "private." Despite the failure of section 5(a), 35 P.S. §676(a), to employ "public bathing place" as a specific description of the scope of the permit requirement, DER does not rely on that subsection for a contention that permits must be obtained for all swimming pools or bathing places.

---

[5] We do not dispute DER's assertion that, under the Statutory Construction Act, the construction of a statute by those charged with its administration and execution should not be disregarded unless clearly erroneous, 1 Pa. C. S. §1921(c)(8). In this case, however, we believe that DER's interpretation is clearly erroneous.

[6] Section 1, 35 P.S. §672, adopts that label as the official title. The title of a statute may be considered in the construction thereof. *Fedor v. Borough of Dormont,* 487 Pa. 249, 409 A.2d 334 (1979).

Accordingly, the general provisions of the Public Bathing Law, including the permit requirement of section 5, no longer apply to condominium pools; they now are out of the "public bathing place" category and, although still regulated, are regulated as *private* bathing places. Not even DER contends that a private homeowner must obtain a permit from DER before he may install a pool in his back yard.

Although we recognize that, as DER illustrates in its brief, the permitting process is a fundamental tool by means of which many administrative agencies exercise their regulatory powers, this tool is not an exclusive or indispensable means for enforcing regulations. Many agencies, including DER, exercise substantive regulatory authority over a great many matters without using the permitting process.[7] As these proceedings illustrate, DER is not without resources to attempt to enforce its regulations in the absence of a permit. Therefore, the permit requirement is not a necessary element of DER's express power to regulate some aspects of condominium pool operation.

---

[7] For example, 25 Pa. Code §123.41, relating to limitations on visible emissions into the atmosphere, provides that no person shall cause, suffer or permit the emission into the outdoor atmosphere of visible air contaminants in such a manner that the opacity of the emission is either 20% or more for a period or periods aggregating more than three minutes in any one hour or 60% or more at any time. All sources of visible emissions in the Commonwealth must comply with these limitations, unless they are otherwise exempted. However, not every person contemplating an activity that will result in a visible emission, operating a home fireplace or backyard barbecue, for example, need first apply for a *permit* from DER. DER has the authority to enforce the regulation against such activities should they violate it, but that authority operates outside the permitting process.

## *"Safety Equipment"* Exception

Having concluded that the general permit provisions of the Public Bathing Law do not apply to this condominium pool, we must now consider whether DER's expressly reserved power to regulate "safety equipment" at such pools under the 1979 amendment applies to the design of the structure of the pool. The 1979 amendment lists the matters relating to the operation of condominium pools over which DER maintains regulatory authority: water supply and content, hygiene and plumbing and electrical facilities, and safety equipment. DER argues forcefully that the structure of a pool is the most basic piece of safety equipment involved in the pool's operation.

Nevertheless, we believe that the interpretation that DER recommends is too broad. Because "water supply and content" and "hygiene and plumbing and electrical facilities" also relate significantly to the safety of a pool, these too would be classified as "safety equipment" under DER's interpretation. However, the legislature, in drafting the 1979 amendment, listed these other matters separately and equally. If "safety equipment" includes everything touching on the safe operation of a pool, then the separate listing of other matters that DER may continue to regulate is redundant and therefore mere surplusage. Of course, the legislature is presumed to have intended to avoid mere surplusage in the words, sentences and provisions of its laws, and the courts must construe a statute, if possible, so as to give effect to every word. *Habecker v. Nationwide Insurance Company,* 299 Pa. Superior Ct. 463, 445 A.2d 1222 (1982).

The term "safety equipment" plainly refers to personalty. Black's Law Dictionary 482 (5th Ed. 1979) defines "equipment" with reference to "furnishings" or

"articles." Pool structures, and necessarily the designs inherent in those structures, are normally real estate.

Hence, as a matter of statutory construction, the term "safety equipment" in section 2(1) of the Public Bathing Law does not include the design of the structure of the pool. If the legislators had intended the design . of the structure to be among the enumerated matters subject to DER regulation, they readily could have said so. Therefore, the condominium pool involved here need not comply with DER's specifications regarding the design of the structure of a pool at a public bathing place.

*Authority for Closure Under the Administrative Code*

DER's final argument is based on section 1917-A of the Administrative Code of 1929, Act of April 9, 1929, *as amended*, 71 P.S. §510-17, which provides in part as follows:

> The Department of Environmental Resources shall have the power and its duty shall be:
>
> (1) To protect the people of this Commonwealth from unsanitary conditions and other nuisances, including any condition which is declared to be a nuisance by any law administered by the department;
>
> . . .
>
> (3) To order such nuisances including those detrimental to the public health to be abated and removed . . . .

Because we held above that this pool is not subject to the permit requirement of section 5 of the Public Bathing Law, we reject DER's argument that the pool is "declared to be a nuisance" under section 12, 35 P.S. §680c, because it was built and operated without the permit required by section 5, and therefore is subject to abatement under section 1917-A.

DER also contends that this pool constitutes a public nuisance apart from the provisions of the Public Bathing Law, because the Environmental Hearing Board found that the pool had an inherently dangerous design feature. In point of fact, the board did not make such a finding, but rather based its holding that this pool was a nuisance on its conclusion that, under the Public Bathing Law, this pool was required to have a permit, and it did not have one. In other words, the board's holding was based entirely on its construction of the Public Bathing Law, and we have construed that law differently above.

However, even if the board had made the finding claimed by DER, we would reject DER's argument, which amounts to an assertion that any unsafe condition of anything in the Commonwealth is a "nuisance" within the meaning of section 1917-A, which DER has the authority to abate. We find nothing in section 1917-A to indicate that the legislature intended such an aggrandizement of DER's powers. If the pool at issue here is not within the scope of DER's statutory authority to regulate public bathing places, then it is not within the scope of some undelimited power of DER to abate nuisances generally.

## Conclusion

Based on the foregoing, we conclude that the swimming pool operated by Nemacolin, Inc. for the exclusive use and enjoyment of the residents of the Maples Condominium and the Laurel Pond Condominium and their guests is not subject to the requirement of section 5 of the Public Bathing Law that pools which are public bathing places must obtain a permit from DER before they may operate. In addition, we conclude that the design of the structure of this pool is not within the scope of the enumerated aspects of condominium pool opera-

tion.that DER has power to regulate under section 2(1) of the law. Therefore, the Environmental Hearing Board committed error of law when it granted summary judgment in favor of DER in Nemacolin's appeal of the closure order DER issued against this pool. Accordingly, we reverse the board's decision.

## ORDER

Now, April 26, 1988, the order of the Environmental Hearing Board, at EHB Docket No. 86-546-R, dated April 28, 1987, granting summary judgment in favor of the Department of Environmental Resources against Nemacolin, Inc., is reversed.