541 A.2d 827

Dithridge House Association, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued March 22, 1988, before Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three.

*Henry E. Rea, Jr., Brandt, Milnes & Rea,* for petitioner.

*Katherine S. Dunlop,* Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, May 6, 1988:

Dithridge House Association (Dithridge), the governing body of a condominium complex known as Dithridge House, appeals from a decision of the Environmental Hearing Board (board) affirming a decision of the Department of Environmental Resources (DER) which (1) rejected Dithridge's request to withdraw its application for a public bathing place permit for the condominium's swimming pool, (2) held that a permit was required, and (3) denied a permit for that pool as constructed.

The issues presented are (1) whether Dithridge should be precluded from arguing that a 1979 amendment to the Public Bathing Law, Act of June 23, 1931, P.L. 899, *as amended,* 35 P.S. §§672-680d, eliminates the permit requirement in regard to this pool, because of Dithridge's failure to appeal from a 1973 DER denial of a permit or a 1974 closure order issued by DER; (2) if Dithridge is not so precluded, whether DER has the

authority, under the Public Bathing Law as it now exists, to deny a permit to Dithridge based on the lack of a four-foot wide deck on all sides of the pool, and (3) if not, whether DER has authority under the Administrative Code of 1929 to deny this permit.

## History

The facts are not in dispute. In 1971 Dithridge built a swimming pool inside its condominium complex. The contractor who built the pool applied for a public bathing place permit for it in 1973. DER denied the application because the pool does not comply with the requirement of section 2.6.8 of DER's Bathing Place Manual that "[t]here shall be provided, completely around every swimming pool, a clear unobstructed paved walk or deck not less than four feet wide, extending from the pool side edge or lip of the coping of the pool . . . ."[1] The contractor did not appeal that denial. On June 3, 1974, DER ordered the pool closed until a bathing place permit was obtained. Neither the contractor nor Dithridge appealed from that order.

In 1979 the legislature amended the Public Bathing Law to exclude condominium pools from the definition of "public bathing place" except with respect to certain enumerated matters. In 1985 Dithridge submitted another application to DER for a permit for this pool. Dithridge later requested permission to withdraw that application because it had received a legal opinion to the effect that the 1979 amendment exempted the pool from the permit requirement. DER denied the request to withdraw the application, based on its view that the permit requirement still applied, and it denied the ap-

---

[1] 25 Pa. Code §193.14 provides: "The Department's pamphlet, 'Bathing Place Manual,' Bureau of Sanitary Engineering Publication No. 16, may be used as a guide for determining compliance with the provisions of §§193.11-193.17 of this Title (relating to permits)."

plication because the pool still lacked a four-foot wide deck around all sides. Dithridge appealed that decision to the Environmental Hearing Board. The board granted summary judgment in favor of DER on the bases of its conclusions (1) that the provisions of the Public Bathing Law, including the permit requirement, still applied to this pool after the amendment of the law, and (2) that, "because Dithridge did not appeal DER's June 3, 1974 permit denial [meaning, apparently, the 1974 closure order, which was based on the findings of the 1973 permit denial], it is now estopped from challenging the findings set forth in that order." Dithridge has appealed from the board's decision.

## Preclusion

DER contends that the doctrine of finality of administrative decisions precludes Dithridge from challenging the factual or legal basis for DER's earlier permit denial or closure order in this appeal of a subsequent permit denial, because Dithridge did not appeal from those earlier orders. The Pennsylvania Supreme Court applied this doctrine in *Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.*, 473 Pa. 432, 375 A.2d 320, *cert. denied*, 434 U.S. 969 (1977), when a steel maker sought to challenge the constitutionality of certain DER regulations relating to particulate matter emissions. The court held that, because the company did not appeal from DER's initial order directing that it comply with the regulations by a specified date, the company was "precluded from attacking the validity or content of either the order or the underlying regulations in the instant enforcement proceeding." 473 Pa. at 443, 375 A.2d at 325.

The doctrine of administrative finality focuses upon the failure of a party aggrieved by administrative action to pursue his statutory appeal remedy. This court ex-

plained the rationale and policy basis for the doctrine in its decision in *Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.*, 22 Pa. Commonwealth Ct. 280, 284, 348 A.2d 765, 767 (1975):

> We agree that an aggrieved party has no duty to appeal but disagree that upon failure to do so, the party so aggrieved preserves to some indefinite future time in some indefinite future proceedings the right to contest an unappealed order. *To conclude otherwise would postpone indefinitely the vitality of administrative orders and frustrate the orderly operations of administrative law.* This principle was expressed in Philadelphia v. Sam Bobman Department Store Company, 189 Pa. Superior Ct. 72, 78, 149 A.2d 518, 521 (1959), in which Judge WOODSIDE stated:

> 'It is settled both under common law and statute that where an act creates a right or liability or imposes a duty and prescribes a particular remedy for its enforcement such remedy is exclusive and must be strictly pursued. This means that one who fails to exhaust his statutory remedies may not thereafter raise an issue which could have and should have been raised in the proceeding afforded by his statutory remedy.

> . . . .

> . . . *This is particularly true of special statutory appeals from the action of administrative bodies.'* (Emphasis added.)

In *Nemacolin, Inc. v. Department of Environmental Resources*, 115 Pa. Commonwealth Ct. 462, 541 A.2d 811 (1988), argued at the same time as the present case, this court held that preclusion based on administrative finality did *not* apply when DER instituted proceedings to close a swimming pool after an earlier unappealed

permit denial, because the later proceeding was an enforcement of a general obligation to operate with a permit if one were required by law, not an enforcement of any particular obligation arising out of the permit denial. Because the pool owner there was not aggrieved by the permit denial, that is, not burdened or placed under any new obligation, the duty to appeal or to forego any later challenge to the factual or legal basis of the permit denial was not triggered.

In the present case, however, DER denied a permit application for the pool in 1973 and then issued a closure order in 1974. Under our analysis in *Nemacolin*, Dithridge's failure to appeal from the closure order, which did impose an immediate, affirmative obligation on Dithridge, should now preclude it from challenging the factual or legal basis for that order, unless some exception applies.

Dithridge responds to DER's preclusion argument by contending that an exception to the doctrine of issue preclusion, relating to an intervening change in the legal context, applies in this case as well.

The Act of July 12, 1979, P.L. 93, amended section 2(1) of the Public Bathing Law, 35 P.S. §673(1), by adding the following language:

> Except with respect to the regulation of water supply and content, hygiene and plumbing and electrical facilities, and safety equipment, *a public bathing place shall not include a swimming pool* owned and *operated for the exclusive use* and enjoyment of residents *of a concominium* or cooperative or their personal guests. (Emphasis added.)[2]

---

[2] In 1984 the amendment to section 2(1) was itself amended to encompass lakes and ponds as well as swimming pools and members of property owners' associations as well as residents of condominiums and cooperatives. Act of July 9, 1984, P.L. 662. Those later changes are not involved in this case.

In *Nemacolin* we construed this change in definition to mean that condominium pools, although subject to regulation by DER with regard to the enumerated matters, are no longer subject to the permit requirement of section 5 of the Public Bathing Law, 35 P.S. §676.

Therefore, Dithridge points to the case of *Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137 (1985), where the Supreme Court considered a situation involving an act passed by the legislature raising the salaries of elected officials of some counties, when permitted by the constitution. Certain county officials brought an action in mandamus to compel payment of the increases, and their county government defended on the basis that payments to these officials, who were already in office when the act took effect, would violate the constitutional ban on increases in the salaries of elected officials during their terms of office. The common pleas court held that the payments were constitutional and ordered that they be made. The county did not appeal. Some seven months later, after the Supreme Court held in another case that such payments were unconstitutional, the county government stopped paying the increases. The affected officials obtained a writ of execution for payment of the increases, and the county government sought to open the judgment. This court held on appeal that the officials' entitlement to the increases was res judicata, by virtue of the unappealed original decision.

The Supreme Court viewed the problem as one of issue preclusion.[3] The court explained the nature and function of issue preclusion as follows:

> [Issue preclusion] is the common law rule that a final judgment forecloses relitigation in a later

---

[3] Although the *issue* of the officials' right to be paid at the higher rate was identical in both actions, the officials' *claim* for payments themselves related to later pay periods in the second action and so was not identical to the claim in the first action.

action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment. . . . The purposes of the rule are the protection of litigants from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation.

*Troutman*, 509 Pa. at 340, 502 A.2d at 139 (citation omitted).

The Supreme Court reversed, holding that inequitable administration of the laws would result from paying the increased rates to these officials while denying them to all others similarly situated. In its opinion the court quoted extensively from the Restatement (Second) of Judgments (1982), §28, and the commentary thereto, which state in part as follows:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . . .

(2) The issue is one of law and . . . (b) *a new determination is warranted in order to take account of an intervening change in the applicable legal context* or to otherwise avoid inequitable administration of the laws.

. . . .

[Comment]

c. **Change in applicable legal context; avoidance of inequitable administration of the laws.** Even when claims in two actions are closely related, an intervening change in the relevant

legal climate may warrant reexamination of the rule of law applicable as between the parties. . . .

. . . .

In deciding whether to apply issue preclusion, or instead to apply a subsequent emerging legal standard, the choice is between two forms of disparity in resolution of legal controversy. . . . [I]t can be particularly significant that one of the parties is a government agency responsible for continuing administration of a body of law that affects members of the public generally, as in the case of tax law. *Refusal of preclusion is ordinarily justified if the effect of applying preclusion is to give one person a favored position in current administration of a law.* (Emphasis added.)

We note that the principle of issue preclusion would *not* preclude Dithridge from arguing the effect of the 1979 amendment to the Public Bathing Law in its current permit application, because that issue obviously could not have been litigated in 1973. Similarly, because Dithridge's present claim of valid legal status under the current state of the law is different from its claim in 1973 to be entitled to a permit under the former state of the law, res judicata also would not apply here.

By the 1979 amendment quoted above, there has been an intervening change in the legal context that undeniably would result in inequitable administration of the laws if Dithridge were precluded, on the basis of administrative finality, from arguing that the permit requirement of section 5 of the Public Bathing Law no longer applies to it. If Dithridge were precluded now from arguing that the permit requirement no longer applies to its pool, then Dithridge would remain subject

to the permit requirement (and subject to the 1974 closure order for lack of a permit) while other similarly situated condominium pool operators, by virtue of the amendment, would not be. Circumstances involving an intervening change in the law, which would result in inequitable administration of the law if preclusion were applied, also create an exception to preclusion based on the doctrine of finality of administrative decisions. In the present case the policy of equitable administration of the laws overrides the policy served by the doctrine of administrative finality; Dithridge is not precluded from arguing here that the permit requirement does not apply to it.

### *Merits*

As stated above in the discussion of the preclusion issue, our decision in *Nemacolin* resolves in Dithridge's favor the issue of whether the permit requirement of section 5 of the Public Bathing Law applies to condominium pools.

The *Nemacolin* case also offers guidance on the second issue relating to the merits of this case—whether the absence of a deck around all sides of the pool in question here falls within DER's continued power to regulate "safety equipment" at condominium pools. In *Nemacolin* we held that the term "safety equipment" does not extend to every conceivable aspect of a pool touching on safety; in particular, the term "equipment" cannot encompass the design of the structure of the pool. We noted that the word "equipment" generally is defined in terms of items of personalty rather than of realty. The presence or absence of a deck around all sides of a pool relates to the design of the structure of the pool, and not to "safety equipment" used in the operation of the pool. Therefore, the absence of a deck is not a matter within the power of DER to regulate un-

der the amended version of section 2(1), and DER may not deny Dithridge a permit on this basis.

Finally, DER repeats in capsule form its argument, also raised in *Nemacolin*, that it has the authority to deny this permit application, apart from the provisions of the Public Bathing Law, by virtue of its power under §1917-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §510-17, to protect the people of the Commonwealth from unsanitary conditions and other nuisances. However, we held in *Nemacolin* that DER's authority to abate nuisances at swimming pools under §1917-A extends no further than its authority to regulate public bathing places under the Public Bathing Law. Therefore, §1917-A of the Administrative Code of 1929 does not provide an independent basis for DER to deny Dithridge's permit application.

## Conclusion

The Environmental Hearing Board's summary affirmance of DER's denial of Dithridge's 1985 permit application, based on the board's conclusions that the provisions of the Public Bathing Law apply to Dithridge's pool and that Dithridge was precluded from arguing otherwise, was error. The permit requirement of section 5 of the Public Bathing Law does not apply to the pool operated by Dithridge. In addition, the absence of a deck around all sides of this pool is not a matter within DER's prohibitory powers under the amended version of section 2(1) of the Law (although DER, under its regulatory powers, could require, with respect to any such condition, a condominium pool to provide warning signs, lifesaving gear or other safety equipment items).

Accordingly, we reverse the board's decision, so as to allow withdrawal of the permit application, in that no permit is required with respect to this condominium pool.

## Order

Now, May 6, 1988, the order of the Environmental Hearing Board, at EHB Docket No. 86-550-R, dated June 17, 1987, is reversed. Dithridge House Association shall be granted leave to withdraw its application to the Department of Environmental Resources for a public bathing place permit for the swimming pool located at Dithridge House.